All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. I now say to the United States in its honor to report. Good morning. The first case this morning is 041579, Pixton v. B&B Plastics. Ms. Halligan. Good morning, Your Honor. Gail Halligan on behalf of Mr. Pixton. This case involved a fishing weight developed by Mr. Pixton. It's a patent case, but I think that infringement was never questioned. Pixton and the appellees, B&B Plastics, Michael Sermon, Russ Springer, who are principals of that company, had entered into a licensing agreement. You suggest that liability for inducement could be inferred from the fact that these two individuals were corporate officers. And you point out that the complaint alleged that they were corporate officers and the hands are admitted that. But it strikes me that unless you put that information in the record before the jury, you can't rely on it. Was that information as to their officer status before the jury or was it only in the complaint in the answer? I don't know if it was explicitly stated to the jury. That's a problem for you, isn't it? I mean, I don't see how you can rely on the fact that they're officers unless that information was in the record before the jury. Well, I can rely on circumstantial evidence. But the circumstantial evidence is founded on the notion that if they're officers, you can infer that they had sufficient control over this, that they were liable for inducement. That's the inference you're trying to draw, as I understand it. But without that foundation, without the evidence that they were, in fact, officers of the company, it seems to me you've got a harder job. Well, yes, it would have been easier to have it laid out directly. Well, the licensing agreement itself, which trial to a great extent revolved around, had Russ Bringer as the signature for the company and also as an individual. He also signed individually. But that might support an inference that they were owners, but it doesn't seem to me that it supports an inference that they were officers. And I'm not sure that being the owner of the company is sufficient to create an inference that they had the kind of control over the need to inducement like that. Well, in the course of the record and contained in the appendix we submitted, there is letter after letter during the negotiations, when the negotiations regarding the minimums contained in the licensing agreement were going on. And you have letter after letter between Russell Bringer and Michael Sermon. Do any of those letters indicate that either of them were officers? Did they sign as an officer? I think it's all they were more informal. And in fact, the letters state, we have a long friendship. The company is not so small anymore. We don't have as much time to sit around and shoot the ball. It was always a friendlier atmosphere. But I think it's clear that either Michael Sermon or Russ Bringer was the individual in control at all times. Well, it may be clear to you, but the question is what was before the jury? That's the question. Well, what was before the jury was Mr. Pickston's testimony and these exhibits. You know, testimony about meetings with respect to the prior infringement, the preparation for the trial.  Is the answer to Judge Lynn's question that there isn't any indication in the materials that were before the jury that these people were officers? Well, as I said, the evidence doesn't have to be direct evidence. But when you have so much evidence, so much cumulative evidence… Was nothing before the jury that identified these two individuals as officers of the company? Well, as you said, it is in the complaint. There was nothing specifically saying Russ Bringer was president. Michael Sermon was vice president and director. Okay, so what other evidence was there that these individuals controlled? If there wasn't evidence that they were officers, what is the evidence that they controlled the activities of the company? There's some mention in the judge's opinion on page 42 of the red brief appendix of control activities. I wasn't able to find that particular colloquy that the judge mentioned in the appendix. Is it there? Are you speaking about Richard Sarkozy's testimony? Yeah. It's in their appendix. Where do I find that? Let's see. I didn't mark it, but I know it's there. On page 42 of the supplemental appendix, the district court quotes a colloquy. I wasn't sure how much of what was there was the colloquy, and I couldn't find the colloquy in the appendix. Is it there? Professor, I'm not sure. I read it. I know what it says. I mean, Richard Sarkozy testified in court. Yeah, but you're supposed to give us the stuff so we can read it. I mean, is it a part of what it intended? There was no stipulation or admission based upon the complaint and the answer that was put before the jury? I believe the jury had the complaint and answer to review. Sarkozy's statement was basically, look, Bringer and Sermon controlled the company. But where's the testimony is the question. It's not in the appendix? No, we weren't relying on that. What I'm relying on is just the cumulative effect of Pixton's testimony. I developed this thing. I worked with Russell Bringer as a pro. We entered into a licensing agreement. We had a prior infringement case. I met with Sermon and Bringer. They authorized me to... We agreed that they would pay for the case, that B&B would pay for the litigation. We all attended the trial. Russell Bringer sat for the trial. He testified. After the appeal of that judgment, I sent a letter saying we would reinstate the minimums now because he had relaxed the minimums during the litigation. Letter after letter after letter between Sermon and Bringer and Pixton with respect to relaxing these minimums, with respect to meetings they've had, and then the breakdown of the negotiations, two or three more letters to Sermon and Bringer. Are you making the weights? Do you need to cease and desist? It was clear that Sermon and Bringer were in control of everything, basically. There was just so much evidence in the record that nobody else was ever mentioned. The corporations mentioned, but at all times, it's Sermon and Bringer, Sermon and Bringer, Sermon and Bringer. And then you have added to that fact that the defenses that were raised in the litigation below were baseless, really. I mean, District Court Judge Mera himself, when he admitted Sermon's letter, June 3rd letter, said, but this letter says you've been negotiating. That's a lot different from you saying you've waived these minimums. It says you're still negotiating. Bringer, eight years of a licensing agreement, a relationship between Bringer and Pixton, and then all of a sudden Bringer asserts he's a co-inventor, even though he had testified in the first infringement trial, he had sat through it. Dennis Pixton testified at length as to his inventorship. The licensing agreement itself identifies Pixton as the inventor. That kind of, I suppose, culpable intent to infringe can't be traced to anybody but Sermon and Bringer. It's just, no, was it stated to the jury these two men are officers of the corporation? During my case, of course, later in the case. No. Was there ample evidence in the record to show that these were the controlling individuals in this corporation? Yes. Why don't we give your end of your rebuttal time now.  Let's hear from Mr. Brown. Order. May it please the Court. Jeff Brown on behalf of Anthony's Michael Sermon and Joan Bringer as PR for the estate of Russ Bringer who passed. To answer the Court's question, the first time the complaint and answer became part of this was the reply brief. It was not in front of the jury. It was not in front of Judge Marra by way of admission or stipulation or anything else. So the jury is not required in the old, now we have PACER, but in the old days to have searched some court file for a complaint and an answer. That was not even argued in front of Judge Marra, nor was it placed in front of the jury. Now what about the colloquy that Judge Marra quotes at 42 here? Do we have that in the appendix? I would have thought you did. I have copies for the Court that I can either approach or give to the Court if it's not in the record. But we have quoted it on page 9 of our brief, which is when he, and this is important. You have copies you want to hand over to the Clerk? I do. All right. Let me get rid of my Post-its. May I leave my Post-its on? Your Honor, there is three days when Judge Marra brings up the Rule 50. It's when we make a motion for it, and then there's an intervening weekend. So then he has a hearing, oral argument on that motion on the 14th, and then he says at the end of that, which is the second day of hearings on the Rule 50 motion, he says, I'm going to defer on this and take a look at my notes. And then he goes back in the chambers and looks at his notes and has the colloquy on page 9 of our brief. Okay. But what you've handed up to us is just another excerpt of what the judge said. What I was asking you about is where is the testimony that the judge has quoted about B&B being controlled by Sermon and Grinever? He merely goes from his notes and says that there was talk by, and it's not in the record, of a witness named Seccosio, which they did not transcribe or bring to your honors, which is the cross-examination we did of a prior lawyer, Seccosio. And he says that's the closest anything comes to talking about corporate structure. So this testimony that the judge quotes was never transcribed? It was never transcribed by the appellate. So it's not before your honor, and it's outside of this record. But Judge Maher, in his notes, searches and says, I find nothing. The closest I find that could be an argument is not even brought out in direct examination in the plaintiff's case in chief, but on our cross-examination where the ex-lawyer says that someone was in control, and the judge found that to be conclusory at best and certainly not an evidentiary basis. You're not denying that both Sermon and Bringer were officers of the corporation, correct? It's not in the record. That's not my question. You're not denying that they were not officers, that they are officers? I'm not denying it. So the only question is what was presented that the jury could have considered? Which includes corporate structure, offices. There couldn't be a treasurer, for example, who wouldn't know a Florida rig and a weighted thing from an appellate. So there's no positions of the officers listed. There was no corporate structure to talk about departments, employees, whether there's a national sales force, what Mr. Sermon did, what Mr. Bringer's health was. And that's what Judge Morris said, that there was no basis for me to find out whether one was actively involved in inducing or the other one, or they both were, or neither was. And he said one might have made a decision full steam ahead. One may have called all the shots, but we don't know which one or if either of them did. And that was the basis for his motion. The Hoover case talks about a president not being responsible just because he's a president. And the Hoover case talks about corporate shields and policy considerations. And certainly the infringement statute allows for personal liability. We certainly concede that. But you have to have more than an ownership interest in the company. And I will point out to the court, they made reference to the licensing agreement, which in the record is 00038 and 00043, is the licensing agreement who talks about the present ownership. This is way back when and includes other people, Russell Bringer, Barry Cummings, Alva Bringer, and Thomas A. And it's signed by all of those people. The problem is that's years ago. But nothing that identifies them as officers or in a position of control. That's accurate. And no one has done that. Your honors would have to. And what they want to do is make the aligata, which is in their complaint, and then let the jury do the probata side of it. And that is make all of these inferences and try to conclude, as you're wrestling with, whether the fact someone is an officer, though not in a particular office, whether someone has an ownership where there's no proof of personal benefit or anything outside of their scope of authority or their scope of employment. And all the Hoover case and the Connecticut case talk about personal benefit and things that could prove culpable intent and things that would allow for personal liability. We don't have any of that there. So they're asking this court to gloss over that and give it to the jury and allow them to make unsupported inferences. They talk about circumstantial evidence. Circumstances are things. Those are facts and evidence from testimony or exhibits. And Judge Maher talked about it. There are no letters. There are no comments. What about page 121B and 122 as to Bringer? He says the question was, was Russ Bringer involved in GAMOR day-to-day? And the answer to that is most assuredly. So there's at least that evidence of day-to-day involvement by Bringer, right? Well, there is that testimony, but there's no reference as to time. And all of their arguments is that Russell Bringer was involved in the very beginning of the licensing five years before, of the prior trial three years before. But they don't in any kind of time frame talk about what happens from and after the termination of the licensing agreement, because that's when the infringement took place. In other words, they had a licensing agreement, but then when that was terminated, the judge did find that the corporation infringed, and that's how they filed corporate liability. But there was no reference in that testimony as to when things were or what things were or what his day-to-day responsibilities could have been. They have to show active involvement. That's a personal involvement which would show some kind of culpability, be it personal benefit or something. Well, there doesn't have to be personal benefit, right? If a president of a company directed the infringing act with knowledge of the patent, that would probably be sufficient, right? Yes, but the orthokinetics case, Hand Hoover talks about personal benefit as it relates to scope of employment or scope of responsibility. I agree with you that even though you don't show that you've got some special personal benefit, you can be held to that. But he does say active involvement, which is either commit the torture yourself or direct others to do it. And that is a leap of faith or an inference without any support, and that's what Judge Morrow found. The Hoover case talks about a president not being personally responsible because he has the corporate shield, which is really only the exception of very limited circumstances. One of them is the infringement statute, 35 U.S.C. 271B, but that requires an active participation that they want you to figure out, that they want the jury to figure out without a basis for it. All of the acts that they talk about, about day-to-day and about involvement, all predate the termination of the licensing. They talk about Mr. Bringer signing the licensing agreement. Mr. Sherman wasn't even in the corporation then, and by the testimony didn't come in as a part owner until later. They talk about what Bringer's sitting through a prior trial. None of that has to do with acts from and after the termination because up until that time they had a license, and then when they were told you have no more license is when the alleged and the judge found it to be infringement took place by the corporate defendant. But they have listed no acts such as an orthokinetic, and they listed the things that the individual did, which you're right, talked about hating and abetting or inducing or directing someone else to do it. There was no testimony here, I was directed by Mr. Bringer or I was directed by Mr. Sherman, where this decision was made in the corporate minutes, where this letter was written, and that's what Judge Maher wrote in his opinion, suggesting there's no role. There's no talk about what role they played, what decisions were made, who made them, the corporate structure, the number of employees, what offices they held, what ownership interests they held. There was a suggestion that they were 50-50, but that does not impose liability. Knowledge and notice is not enough, and it is not automatic that you are liable just because you're an officer. Plaintiff would like you to believe that it is strict liability, and if you can try to show in a complaint, owner, officer, director, that that's not enough. Not even the complaint was in front of the jury. Was there any evidence as to what proportion of the company's business was represented by this lure? There was nothing in the record. There was talk that this was not the sole business, but there was nothing in the record to talk about national sales efforts, production, manufacture, marketing, or who made any of these decisions, or who committed the tort, or who did the infringement. What they were trying to suggest is that a corporation has no arms and legs and can only act through individuals. So they are trying to suggest that ownership is enough, and that the Hoover case and the OrthoConnects case would suggest otherwise, as would Manville suggest that that's not enough. And there is no indication of sham corporations or piercing corporate veils or alter egos or the other ways that they could get at it. So they must either show that these two individuals individually committed a tort or directed others to do it, and they're trying to suggest that Mr. Bringer signed the licensing agreement years before. So without that in the record, that is why Judge Morris suggested there was no evidentiary support for sending it to the jury. Could the jury, with pure speculation, or make inferences without support in the record? That is what Rule 15 is designed to prevent, and that is where a reasonable jury with the evidentiary basis could not find for a party. It is the judge's respectful obligation to take that away under Rule 50 judgment as a matter of law. And that's what he did. He talks about his notes. He talks about the testimony. The only transcription of the appellant is the testimony of Mr. Pixley, who talks about what happened in the old days, what happened when they had the licensing agreement and were friends and all of that. He has no knowledge of what happens after he terminates the licensing agreement and the infringement begins. They made reference, the judge made reference to this, outside of the record, cross-examination of the ex-attorney. And Judge Maurer found that's the closest they came, and that was to suggest ownership. And the case law suggests that ownership is not enough. The burden of proof, and this is a de novo review, but the burden of proof is certainly upon the plaintiff, and it is their burden to prove it as opposed to us having to disprove it. And there is also the case law which suggests that if there's two inferences, either of which are reasonable, then the plaintiff hasn't met their burden of proof. And we would suggest that the appendix in this case is very telling. There is nothing in the appendix to the appellant brief which would indicate any acts by either defendant from and after the date of termination. They make reference to licensing agreements before and prior trials before, but they make no reference to acts from and after the date of the termination. And therefore Judge Maurer was left with, do I decide whether it was Mr. Bringer, or was it Mr. Sermon, or was it both, or was it neither? And he was unable from an evidentiary basis to make any of those determinations, and that's why he took it away from the jury. There has not even been a suggestion of any necessary culpable intent, and that's where you have the intention to have your acts infringe upon a patent. And there was no suggestion by way of personal benefit or by way of asking another to do anything that there has even been a suggestion of the kind of intent necessary which would give you personal liability. It is not just the intent to remain an owner or the intent to hold an office, but you are required to personally participate, personally be involved, and have a degree of culpability and an intention to do something, and that has simply not come forward. So it would be our suggestion to the panel that the control they talk about is before the infringement happened. The ownership they talk about began with many, many other owners, and then there was testimony that Mr. Sermon bought in in some sort of arrangement earlier, about 1993 or 1994, regarding Mr. Pixton. But Mr. Pixton, who has no knowledge of corporate activities from and after the termination date, is certainly not a sufficient basis for this court to determine that it could go to a judge to try to make inferences without a substantial basis. Thank you. Thank you. May I surrender the rest of my time? Yes, you may. And here is your copy. It has your notes on it. May I approach? Please. Mr. Oliver? Thank you. I'd just like to return to the Rule 50 standard. Just to reiterate, the evidence has to be considered in the light most favorable to the plaintiff. And the NOV judgment should be affirmed only if the facts and inferences point so overwhelmingly in favor of the move-in that reasonable people could not arrive at a contrary verdict. And I'm sure you've heard that a million times. I'd like to return to the record that was before the jury. You have an August 1997 letter from Pixton to Mike Sermon at B&B Plastics at their corporate address, advising that he wants to reinstate the minimums. You have an April 1998 memo from Sermon, no, I'm sorry, Ressbringer and Mike Sermon to Pixton presenting three options to renegotiate these minimums. You have the June 3rd letter from Mike Sermon to Pixton. I apologize. This is a May 1998 letter from Pixton to Russ and Mike, Ressbringer, Mike Sermon, because they were very informal, going over a meeting they had, discussing the options, and basically describing the breakdown of these negotiations. You've got in response to that the June 3rd letter from Sermon, you've got two pages discussing in length everything Gambler's done to promote the weight, their position, everything Gambler's done in the past to promote the weight, what they intend to do in the future to promote the weight, and also containing the same three options. You've got a letter back with exhibits, Exhibit B, Florida Rig Weight Promotion, 155 in the record. You then have Pixton's letter, Ressbringer, Mike Sermon, B&B Plastics rejecting their proposals. The problem with all that is that it relates to the period in which they were producing this under license, rather than the period afterwards. Well, it relates to, with all due respect, it relates to the fact that Mike Sermon and Ressbringer were completely in control of the production, the sale of this thing. It shows they were intimately involved with every aspect of it, and that when these negotiations broke down and they received, and Pixton sent the termination letter, it's hard to imagine that at that point, you know, somebody named Russell Roberts made the decision to keep producing the weight. I think there was enough for the jury to, for it to have gone to the jury, for the jury to decide whether enough was shown. Okay. Thank you very much. The case is submitted. Thank you.